# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN SPADACCINI,** | Civ. No. 2:12-06246 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Stephen Spadaccini brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying in part his application for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. For the reasons that follow, the Commissioner's decision is **VACATED** and **REMANDED** for reconsideration consistent with this opinion.

## I. LEGAL STANDARDS

### A. The Five-Step Sequential Analysis

      Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to

demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the court conducts a plenary review of the legal issues.  *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations.  *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

On July 22, 2008, Plaintiff filed an application for a period of disability, DIB and SSI.  The filings alleged that Plaintiff had a disability with an onset date of September 1, 2007, due to conditions including chronic heart failure, ischemic heart disease, recurrent arrhythmias, cardiomyopathy, coronary heart disease, stroke, arthritis and depression. Plaintiff's claim was denied initially on January 23, 2008 and on reconsideration on June 26, 2009.  On October 19, 2012, Plaintiff testified at a hearing before Administrative Law Judge Richard West (the "ALJ").  The ALJ then sent interrogatories regarding the case to a medical expert, Dr. Fechner.  At Plaintiff's request, on February 15, 2011, the ALJ held a supplemental hearing, so that Plaintiff could question Dr. Fechner about the interrogatories.  On April 15, 2011, the ALJ issued a partially favorable decision, finding Plaintiff disabled starting on March 6, 2011.  Accordingly, the ALJ awarded SSI from that date.  However, because Plaintiff's insured status had expired on December 31, 2008, the ALJ denied Title II benefits.  The ALJ recognized that Plaintiff had several severe impairments, but found that, prior to March 6, 2011, those impairments did not meet or equal the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.  The ALJ also found that, prior to March 6, 2011, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work.

Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on August 9, 2012.  Plaintiff now brings the instant appeal, challenging the ALJ's determination that he was not disabled from September 1, 2007 through March 5, 2011.

## III. DISCUSSION

Plaintiff challenges the ALJ's determination that he was "not disabled" from September 1, 2007 through March 5, 2011.  Plaintiff argues that the ALJ committed the

following errors: (1) finding that, prior to March 6, 2011, Plaintiff failed to demonstrate a listing-level impairment; (2) finding that, prior to March 6, 2011, Plaintiff retained the RFC to perform sedentary work; and (3) failing to obtain vocational expert testimony. Each of these challenges will be addressed in turn.

### A. Substantial evidence supports the ALJ's finding that Plaintiff does not have a listing-level impairment.

Plaintiff first argues that the ALJ failed to properly analyze whether his impairments met or equaled one of the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. While he appears to agree with the ALJ that none of his impairments independently are of listing-level severity, Plaintiff argues that the ALJ failed to consider his impairments in combination. Specifically, Plaintiff believes that the combination of his "near misses" in the orthopedic listings and the cardiovascular listings create a medically-equivalent impairment. (Pl's Br. 20.)

At step three, an ALJ must consider each of the claimant's individual conditions and determine whether they meet or equal any listed impairment. Where the claimant has "a combination of impairments, no one of which meets a listing ... [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(3). For a combination of impairments to be medically equivalent to one in the listings, it must be "at least of equal medical significance." *Id.*

Plaintiff's assertion that the ALJ did not consider his impairments in combination is incorrect. The ALJ specifically found that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (R. at 22.) "[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so." *Gainey v. Astrue*, Civ. No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (citing *Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x 186, 189 (3rd Cir. 2008)).

In addition, after reviewing the decision as a whole, the Court finds that the ALJ's development of the record and explanation of findings at step three is sufficient to allow for meaningful review, as required under *Burnett*. *See Burnett*, 220 F.3d at 120. *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Instead, a reviewing court should look at the decision as a whole to determine whether the ALJ considered the appropriate factors. *Id.* Here, the ALJ's analysis of the medical evidence in light of the cardiovascular, musculoskeletal and mental disorder listings was comprehensive enough for meaningful review. The ALJ considered the medical evidence regarding Plaintiff's cardiovascular impairments throughout the opinion, finding that Plaintiff did not meet the criteria for Listing 4.04, 4.05 or, before March 6, 2011, 4.02. (See, e.g., R. at 22, 28.) The ALJ also considered Plaintiff's lower back pain and the record evidence revealing degenerative joint disease in Plaintiff's lumbar spine, finding that he did not meet Listing 1.04. (R. at 22, 24-25.) Further, the ALJ discussed the

limitations in functioning created by Plaintiff's mental impairments, finding those impairments did not meet any mental disorder listing. (R. at 22.)

Finally, the record contains substantial evidence supporting the ALJ's determination that the so-called "near misses" do not equal a listing-level impairment. At the supplemental hearing, Dr. Fechner specifically opined on whether Plaintiff's impairments in combination met or were medically equivalent to any listing. (R. at 76-77.) His answer was no. (*Id.*) And the administrative record contains numerous reports supporting the ALJ's findings at step three. (*See* R. at 189, 250, 352, 368, 397.) Accordingly, the Court affirms this determination.

### B. The ALJ failed to adequately consider Dr. Brabston's testimony.

Regarding step four, the ALJ found that, prior to March 6, 2011, Plaintiff retained the RFC to perform sedentary work. Sedentary work requires the capacity to lift up to ten pounds, and during an eight-hour workday, sit for six hours and stand and/or walk for two hours. Social Security Ruling 96-9p, 1996 WL 374185, at *6. At issue are three differing medical opinions regarding Plaintiff's ability to perform sedentary work. Consistent with the requirements of sedentary work, Dr. Fechner opined that Plaintiff could occasionally lift and carry up to ten pounds, and during an eight-hour work day, sit for six hours and stand and/or walk for two hours. (R. at 25.) Dr. Ahmed's assessment, which was authored by his office manager, indicated that Plaintiff was completely disabled. (R. at 397-405.) Dr. Brabston opined that Plaintiff could lift and carry five pounds, sit for less than six hours in an eight-hour day, and stand and/or walk for six hours in an eight-hour day. (R. at 382.)

Plaintiff first argues that the ALJ erred by giving great weight to Dr. Fechner's assessment and little weight to opinion of Dr. Ahmed, who was Plaintiff's treating physician. An ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). In this case, the ALJ detailed his reasons for discounting Dr. Ahmed's opinion. He noted that Dr. Ahmed is not a cardiologist. (R. at 27.) He found that Dr. Ahmed's own notes did not support the conclusion that Plaintiff was completely disabled – the notes offered no explanation for why Plaintiff would be unable to perform either prolonged sitting or even occasional standing or walking. (*Id.*) The ALJ also found Dr. Ahmed's assertion that Plaintiff could not lift or carry any weight to be implausible. (*Id.*) Finally, the ALJ noted that Dr. Ahmad's conclusion was inconsistent with other evidence in the case, including objective clinical findings and Dr. Fechner's opinion. (*Id.*) Accordingly, the ALJ did not err by affording greater weight to Dr. Fletcher's opinion than to Dr. Ahmed's assessment.

Plaintiff next argues that the ALJ failed to adequately consider Dr. Brabston's assessment. The Court agrees. The ALJ must set forth the basis for his decision,

including his reasons for discounting probative evidence in the record that contradicts his findings. *Cosby v. Comm'r of Soc. Sec.*, 231 Fed. App'x 140, 146 (3d Cir. 2007) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The ALJ's opinion must allow the reviewing court to determine if "significant probative evidence was not credited or simply ignored." *Fargnoli*, 247 F.3d at 42; *see also Burnett*, 220 F.3d at 121 (finding that the ALJ had not properly fulfilled his duty where he failed to "consider and explain his reasons for discounting all of the pertinent evidence before him in making his [RFC] determination"). Here, the ALJ's decision notes Dr. Brabston's opinion, but the ALJ did not indicate what weight he gave to that assessment. (R. at 24.) The ALJ's lack of analysis regarding Dr. Brabston's assessment leaves the Court wondering if "he considered and rejected [it], considered and discounted [it] or failed to consider [it] at all." *Fargnoli*, 247 F.3d at 43-44. His "failure to explain his implicit rejection of this evidence" was error. *Id.* (quoting *Cotter*, 642 F.2d at 707). Accordingly, because the ALJ did not sufficiently explain his RFC findings, the Court cannot determine whether the RFC determination was supported by the substantial evidence. Thus, the Court vacates the ALJ's findings at step four and remands this issue for reconsideration in light of this opinion.

### C. Without further findings, the Court cannot evaluate whether a vocational expert was necessary.

Finally, without knowing the weight afforded to Dr. Brabston's testimony, the Court is unable to assess whether the ALJ should have obtained a vocational expert at step five. SSR 96-9P, on which the ALJ relied in this case, states:

> If an individual is unable to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded. The extent of erosion will depend on the extent of the limitations. For example, if it can be determined that the individual has an ability to lift or carry slightly less than 10 pounds, with no other limitations or restrictions in the ability to perform the requirements of sedentary work, the unskilled sedentary occupational base would not be significantly eroded; however, an inability to lift or carry more than 1 or 2 pounds would erode the unskilled sedentary occupational base significantly. *For individuals with limitations in lifting or carrying weights between these amounts, consultation with a vocational resource may be appropriate*.

1996 WL 374185, at *6 (1996) (emphasis added). SSR 96-9p also provides that "[i]f an individual is unable to sit for a total of [six] hours in an [eight]-hour work day, the unskilled sedentary occupational base will be eroded." Dr. Brabston opined that Plaintiff could lift and carry a maximum of five pounds and sit for less than six hours per day. (R. at 382.) Accordingly, depending on the weight afforded to Dr. Brabston's opinion, consultation with a vocational expert may have been necessary. The Court therefore also vacates the ALJ's step five determination and remands this issue for reconsideration in accordance with this opinion.

5

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and **REMANDED** for reconsideration consistent with this opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 15, 2013**